IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN/WATERLOO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>TRAVIS JOHN O'CONNOR,<br><br>        Defendant. | No. CR07-2008-MWB<br><br>**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *B.  Objections To Findings Of Fact* . . . . . . . . . . . . . . . . . . . . . . . . 6
        *1.  Officer Rea's training* . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        *2.  The quality of Officer Rea's training* . . . . . . . . . . . . . . . . 7
    *C.  Objection To Conclusions Of Law* . . . . . . . . . . . . . . . . . . . . . . 8

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On May 9, 2007, an indictment was returned against defendant Travis John O'Connor, charging him with transporting and attempting to transport child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1), and distribution and attempted distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1). On June 7, 2007, defendant O'Connor filed a motion to suppress. In his motion, defendant O'Connor seeks to suppress evidence seized after a search of his residence, pursuant to a search warrant. Defendant O'Connor asserts that the search warrant was issued without probable cause.

Defendant O'Connor's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss filed a Report and Recommendation in which he recommends that defendant O'Connor's motion to suppress be denied. Judge Zoss concluded that the search warrant application provided the state court judge with a reasonable basis to conclude that there was a fair probability that contraband could be found at O'Connor's residence. Defendant O'Connor has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant O'Connor's motion to suppress.

### B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> The affiant, Kari Rea, is a member of the Cedar Falls, Iowa, Police Department. In her affidavit, Officer Rea indicated she "has received specialized training in internet crimes, specifically involving internet crimes against children," and

2

"[s]he is a member of the Iowa Internet Crimes Against Children Task Force."

Officer Rea stated she became acquainted with O'Connor while she was posing as a fifteen-year-old Cedar Falls student ("the girl") in an online chat room. According to the officer, O'Connor approached the girl in the chat room, and they engaged in "a number of online chats" between August 4, 2006, and February 7, 2007. Their chats included sexually-explicit discussions in which O'Connor "made inquiries about the girl's sexual history, and what she was sexually willing to do with him." He asked if the girl would like to see some photos, and he transmitted sexually-explicit photos of children. Officer Rea forwarded the photographs to the National Center for Missing and Exploited Children for analysis, and that organization confirmed that four of the photographs contained images of known victims of child pornography.

In addition, O'Connor used a webcam to transmit video of himself masturbating while he chatted online with the girl. At one point, he provided a cell phone number to the girl so she could call him, and Officer Rea traced the identity of the cellular service subscriber to Moody Plumbing and Heating of Muscatine, Iowa. O'Connor had stated in his online chats that he worked in "heating and air conditioning."

Officer Rea was able to capture video of O'Connor while his webcam was operative. She compared his image with a driver's license photograph of O'Connor. She also noted that in the video, O'Connor was wearing a work shirt bearing the name "Travis" on it, and she confirmed that O'Connor's first name was "Travis." O'Connor told the girl he lived with his parents, and Officer Rea confirmed that O'Connor lived with his parents, Timothy and Colleen O'Connor, in Muscatine, Iowa. In addition, during the chats, O'Connor stated he had a sister, and the officer was able to confirm that O'Connor has a sister.

After setting forth the above facts in her affidavit, Officer Rea then stated the following:

3

Due to the identification of drivers license photo of the defendant (Travis O'Connor) with the electronic image of the person captured via web camera feed as that being of one in the same person, it is believed that the defendant is in fact the person who has been communicating with your applicant since August, 2006, and speaking of meeting for the purpose of sex. Further, it has been the experience of your applicant that persons possessing, disseminating, or otherwise saving material such as the images shared by the defendant O'Connor (and later confirmed by the National Center for Missing and Exploited Children as those being of children engaging in sex acts or simulated sex acts) will typically do so in private, and in an environment of which they can maintain control, such as their personal residence. In addition, it is your applicant's experience, that those persons possessing, disseminating, or otherwise saving material such as the images electronically shared by the defendant via computer link, will keep, harbor, and/or collect and store such images in an electronic form, such as on computer hard drives, media disks, or video tapes. As stated previously, the images provided to your applicant by the defendant [were] done so simultaneously during a chat in which a web camera was activated, while showing the facial image of the defendant. For that reason, it is believed that the above named defendant (Travis J. O'Connor) is in fact the person who electronically shared the aforementioned photos of children engaging in sex acts or simulated sex acts, and that he likely did so from his residence . . . in Muscatine, IA., and that the images were

4

>                    transmitted electronically, via a computer at his
>                    residence.
>
> (Doc. No. 18-2, p. 2)
>           Officer Rea sought a warrant to search O'Connor's
>           residence for evidence specifically linking him to the chats
>           with the fictitious girl, and for other evidence linking
>           O'Connor to illegal activities involving the production,
>           dissemination, receipt, or sharing of pornographic material.

Report and Recommendation at pp. 2-4. Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant O'Connor.

## II. LEGAL ANALYSIS

### A. Standard Of Review

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further

5

> evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). As noted above, defendant O'Connor has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant O'Connor's motion to suppress.

### *B. Objections To Findings Of Fact*
#### *1. Officer Rea's training*

Defendant O'Connor initially objects to Judge Zoss's failure to mentioning certain aspects of Officer Rea's training which are not disclosed within her affidavit in support of the search warrant application at issue in this case. Specifically, defendant O'Connor notes that Judge Zoss did not mention that Officer Rea did not disclose the scope of her "specialized training" in internet crimes. In addition, defendant O'Connor asserts that Judge Zoss did not mention that Officer Rea did not disclose the specific activities of the Iowa Internet Crimes Against Children Task Force, or that Officer Rea did not disclose how long she had been a member of that task force. Moreover, defendant O'Connor points out that Judge Zoss did not note that Officer Rea did not disclose whether she had

6

ever previously obtained a search warrant for a residence in a child pornography case and what the results of such searches had been.

The court notes that Judge Zoss correctly pointed out that:

> When the issuing judge relies on nothing other than the affidavit supporting the warrant application, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995); *accord United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005); *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999).

Report and Recommendation at 1-2. As such, in making his findings of fact, Judge Zoss properly limited his inquiry to that information found in the four corners of the search warrant application at issue in this case. While defendant O'Connor's laundry list of missing items concerning Officer Rea's training may be relevant in the analysis of the search warrant application, Judge Zoss did not err by failing to include this information in his findings of fact. Accordingly, this objection is denied.

### 2. *The quality of Officer Rea's training*

Defendant O'Connor next objects to Judge Zoss's conclusion that: "the affidavit contained background information indicating Officer Rea is experienced and well-qualified in the investigation of internet crimes against children." Report and Recommendation at 5. Defendant O'Connor argues that this characterization of Officer Rea's background is not supported by the information contained in her affidavit.

As the court reads Officer Rea's affidavit, Officer Rea indicates that she has four years of experience as a "Police Officer" and another five years in the "Investigative

7

Unit".[1] Moreover, she avers that: "She has received specialized training in internet crimes, specifically involving internet crimes against children. She is a member of the Iowa Internet Crimes Against Children Task Force." Search Warrant Affidavit at 1, Doc. 18-2. Although Officer Rea could clearly have added additional pertinent details to her affidavit concerning her work history in law enforcement, the court cannot fault Judge Zoss's characterization of her experience. It must be remembered that the entire history of cyberspace and the internet, as it currently exists, only spans less than twenty-years. In the brave new world of cyberspace criminality, Officer Rea is an experienced and well-qualified investigator. Therefore, this objection is also denied.

### C. Objection To Conclusions Of Law

Defendant O'Connor objects to Judge Zoss's conclusion that the search warrant application provided the state court judge with a reasonable basis to conclude that there was a fair probability that contraband could be found at O'Connor's residence. He argues that Judge Zoss did not require an evidentiary nexus between the items which were the subject of the search warrant and defendant O'Connor's residence. Defendant O'Connor asserts that there was no evidence in the affidavit connecting the alleged criminal activity and O'Connor's residence. Additionally, defendant O'Connor argues that Officer Rea's

---

[1]The court notes that this portion of Officer Rea's search warrant affidavit is not an example of clarity. This portion of her affidavit reads as follows:

| Applicant's Name: | Kari L. Rea | |
|---|---|---|
| Occupation: | Police Officer | Tenure Years: 4 years |
| Assignment: | Investigative Unit | Tenure Years: 5 Years |

Search Warrant Affidavit at 1, Doc. 18-2.

8

generalized statement regarding her qualifications did not provide a valid basis for a finding of probable cause.

The seminal case of *Illinois v. Gates*, 462 U.S. 213 (1983), provides the standard an issuing court must follow in determining whether probable cause supports a search warrant application and, consequently, the duty of the reviewing court when considering the propriety of that determination:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238.

The question presented on review of an issuing judicial officer's determination is not whether the reviewing court would have issued the warrant based on the affidavit as presented, but whether the court which did issue the warrant had a "'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-239 (citation omitted). Thus, a reviewing court does not conduct a de novo review of the issuing judge's determination, but must instead afford it great deference. *Id.* at 236. As the United States Supreme Court explained in *Gates*:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [*Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590, 21 L.Ed. 2d 637 (1969)]. "A grudging or negative attitude toward warrants," [*United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 745-46, 13 L.Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong

9

> preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, at 109, 85 S. Ct. at 746.

*Gates*, 462 U.S. at 236; *see United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995); *see also United States v. Brown*, 461 F.3d 1062, 1073 (8th Cir. 2006); *United States v. Goff*, 449 F.3d 884, 886 (8th Cir. 2006); *United States v. Stevens*, 439 F.3d 983, 997-98 (8th Cir. 2006); *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006).

The Eighth Circuit Court of Appeals has weighed in on this topic as well, observing that:

> Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched.

*Gladney*, 48 F.3d at 312 (quoting *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir.1994)); *see also Caswell*, 436 F.3d at 897 (noting that "the magistrate should 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Gates*, 462 U.S. at 238); *United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000) ("The evidence as a whole must provide a substantial basis for a finding of probable cause to support the issuance of a search warrant."); *United States v. Johnson*, 219 F.3d 790, 790 (8th Cir. 2000) ("Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit.") (quoting *United States v. Tellez*, 217 F.3d 547 (8th Cir. 2000) (in turn quoting *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999)

10

(internal quotation marks omitted)).  Equally on point is the observation of Justice (then Judge) Kennedy:

> For probable cause to exist, a magistrate need not determine that the evidence sought is in fact on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

*United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985), *cert. denied*, 474 U.S. 847 (1985) (emphasis added in part) (citations omitted).  Where, as here, the issuing judge relied solely on the affidavit presented to him, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *Gladney*, 48 F.3d at 312 (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), *cert. denied*, 459 U.S. 1201 (1983)).

Upon review of the record and Judge Zoss's Report and Recommendation, the court concludes that Judge Zoss correctly concluded that there was a substantial basis to support the state judge's finding of probable cause to search defendant O'Connor's residence.  The court recognizes that the Eighth Circuit Court of Appeals has held that "punctilious paragraph-by-paragraph dissection of the supporting affidavit" is not the appropriate standard of review.  *United States v. Townsley*, 843 F.2d 1070, 1076 (8th Cir. 1988); *see United States v. Leisure*, 844 F.3d 1347, 1354 (8th Cir. 1988) (declining to "undertake a piecemeal dismemberment of the various paragraphs of the affidavit without attention to its force as a whole.").  Rather, the court acknowledges that a determination of probable cause depends on a reading of the affidavit as a whole.  *Gates*, 462 U.S. at 237.  Here, Judge Zoss considered the affidavit as a whole.

11

The search warrant application was supported by the affidavit of Kari Rea, a Cedar Falls Police Department Officer and a member of the Iowa Internet Crimes Against Children Task Force. In her affidavit, which was dated February 9, 2007, Officer Rea details online chat history with the individual she subsequently identified as defendant O'Connor between August 4, 2006, and February 7, 2007. Officer Rea also averred that:

> Further, it has been the experience of your applicant that persons possessing, disseminating, or otherwise saving material such as the images shared by the defendant O'Connor (and later confirmed by the National Center for Missing and Exploited Children as those being of children engaging in sex acts or simulating sex acts) will typically do so in private, and in an environment of which they can maintain control, such as their personal residence. In addition, it is your applicant's experience, that those persons possessing, disseminating, or otherwise saving material such as the images electronically shared by the defendant via computer link, will keep, harbor, and/or collect and store such images in an electronic form, such as on computer hard drives, media disks, or video tapes. As stated previously, the images provided to your applicant by the defendant was done so simultaneously during a chat in which a web camera was activated, while showing the facial image of the defendant. For that reason, it is believed that the above named defendant (Travis J. O'Connor) is in fact the person who electronically shared the aforementioned photos of children engaging in sex acts or simulated sex acts, and that he likely did so from his residence at 906 Sycamore Street in Muscatine, IA, and that the images transmitted electronically, via computer at his residence.

Search Warrant Affidavit at 2, Doc. 18-2.

The court concludes that these facts show that the issuing state judge had a substantial basis for concluding that the search warrant application in this case was supported by probable cause. See *United States v. Watzman*, 486 F.3d 1004, 1008 (7th

12

Case 6:07-cr-02008-MWB   Document 24   Filed 07/09/07   Page 12 of 15

Cir. 2007); *see also United States v. Clive*, No. 05-0383, 2006 WL 1207954, at *1 (W.D.Pa. May 2, 2006) (upholding a warrant to search defendant's residence for child pornography after defendant sent an undercover agent a single email with an attached image depicting a female who appeared to be, and according to defendant was, a minor).

Defendant O'Connor argues in essence that the issuing state judge erroneously assumed that defendant O'Connor was masturbating on the web cam from his home and that he viewed child pornography in the privacy of his residence when, he argues, that he might also have engaged in such activities as his place of work. In *Watzman*, 486 F.3d 1004, the Seventh Circuit Court of Appeals recently addressed precisely this same issue and rejected it. In *Watzman*, the defendant conditionally pleaded guilty to one count of possessing child pornography, 18 U.S.C. § 2252A(a)(5)(B), and nine counts of receiving child pornography, 18 U.S.C. § 2252A(a)(2)(A), (b)(1). On appeal, he challenged the denial of his motion to suppress evidence seized from his home, arguing, *inter alia*, that "the affidavit in support of the application for a search warrant did not establish probable cause to believe that evidence of a crime would be found in his apartment." *Id.* at 1007. The defendant argued that "it is 'equally likely' that one might download child pornography in 'innumerable places, such as offices, public and private libraries, universities and airports.'" *Id.* at 1008. Rejecting that argument, the Seventh Circuit Court of Appeals observed:

> Watzman's argument is meritless. First, probable cause is not certainty; it requires "only a probability or substantial chance that evidence may be found." *Sidwell*, 440 F.3d at 869. Thus, Watzman's assertion that alternative inferences might have been drawn about where child pornography might be stored is unavailing. Moreover, a finding of probable cause "does not require direct evidence linking a crime to a particular place." *Anderson*, 450 F.3d at 303. Reasonable

13

Case 6:07-cr-02008-MWB   Document 24   Filed 07/09/07   Page 13 of 15

> inferences are permitted. *Id.*; *United States v. Angle*, 234 F.3d 326, 335 (7th Cir.2000). In his affidavit Agent Wolflick explained in great detail his experience with consumers of child pornography and specifically averred that these individuals tend to hoard collections at home. The district court's reliance on these expert representations is not an "assumption"; the court was entitled to rely on Agent Wolflick's expertise to conclude that there was a fair probability that child pornography would be found in Watzman's home. *See United States v. Hall*, 142 F.3d 988, 995 (7th Cir. 1998) (citing "expert information" in affidavit that "pornographers tend to maintain their collections of material for long periods, usually at home"); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (holding that affidavit provided "ample reason" to believe items sought were in defendant's apartment, where affiant stated that "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes").

*Id.; see United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) (reversing district court's suppression of evidence for failure to show nexus between the alleged criminal activity and the place to be searched, concluding that where defendant video taped and photographed a sexual encounter between a mentally retarded male and a female at his prior residence, it was reasonable to presume that defendant would maintain possession of the videotape and photographs and have those items at his new residence).

Here, viewing the affidavit at issue here in a common sense manner, the court cannot say that the issuing state judge did not have a substantial basis to believe that the items sought in the warrant would be found at O'Connor's residence. The state judge was entitled to rely on Officer Rea's expertise to conclude that there was a fair probability that child pornography would be found in defendant O'Connor's residence. *See Watzman*, 486

14

F.3d 1008; *see also Summage*, 481 F.3d at 1078; *Hall*, 142 F.3d at 995; *Lacy*, 119 F.3d at 746. The court, therefore, overrules this objection to Judge Zoss's analysis of the search warrant.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **denies** defendant O'Connor's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 9th day of July, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

15